PITTMAN, Judge.
Bonnie Curry appeals from an adverse judgment entered by the Russell Circuit Court (“the trial court”) following a hearing held by the trial court pursuant to the Teacher Accountability Act, § 16-24B-1 et seq., Ala.Code 1975. We affirm.
In 2009, the Russell County Board of Education (“the board”) and Curry executed a written contract memorializing their agreement that the board would employ Curry as a contract principal[1] for a three-year period expiring on June 30, 2012. Section 16-24B-3(f)(2) provides that, unless the chief executive officer[2] of the employing board[3] recommends cancellation *713 or nonrenewal of a contract principal’s contract and that recommendation is accepted by a majority of the employing board, the employing board shall enter into a new contract with the contract principal for a period of at least three years. However, § 16-24B-3(c), Ala.Code 1975, provides that the nonrenewal of a contract principal’s contract may be effected by the chief executive officer’s making a written recommendation to the employing board that the contract not be renewed and a majority of the employing board’s voting in favor of that recommendation at least 90 days before the end of the contract. Section 16-24B-3(c) further provides that “[t]he decision of the chief executive officer and the employing board [not to renew.the contract principal’s contract] may be based on any reason except personal or political reasons.” (Emphasis added.)
In March 2012, the board’s superintendent (“the superintendent”) recommended nonrenewal of Curry’s contract due to “Lack of Leadership” and “Declining Test Scores,” and, more than 90 days before the end of Curry’s contract, a majority of the board voted in favor of that recommendation. Section 16-24B-3(e)(2)a., Ala.Code 1975, provides that, after a majority of an employing school board has voted in favor of a chief executive officer’s recommendation that a contract principal’s contract not be renewed pursuant to § 16-24B-3(c), the contract principal
“may request a nonjury, expedited evi-dentiary hearing to demonstrate that the chief executive officer’s or supervisor’s recommendation to nonrenew the contract was impermissibly based upon a personal or political reason, or the recommendation was approved based upon personal or political reasons of the chief executive officer, supervisor, or the employing board, which shall be the sole issues at any such hearing. The contract principal shall bear the burden of proof by a preponderance of the evidence. The hearing shall be before the circuit court in the judicial circuit of the county in which the employing board sits....”
(Emphasis added.)
Curry requested a hearing before the trial court in accordance with § 16-24B-3(e)(2)a., and the trial court held such a hearing. Following that hearing, the trial court entered a judgment finding that Curry had failed to prove by a preponderance of the evidence that the nonrenewal of her contract had been based upon an impermissible personal or political reason.
Sections 16-24B-3(g) and 16-24B-5(a), Ala.Code 1975, provide for an appeal to this court from a circuit court’s judgment following a hearing held in accordance with § 16-24B-3(e)(2)a. Section 16-24B-3(g) provides that “[t]he decision of the circuit court ... shall be final and exclusively appealable to the Alabama Court of Civil Appeals, as a nonevidentiary appeal in which review, is limited to the record from the expedited evidentiary hearing as provided for in this chapter.” In pertinent part, § 16-24B-5(a) provides that “[a]ll appeals of a final decision from the expedited evidentiary hearing shall lie with the Alabama Court of Civil Appeals” and that such an appeal “shall be perfected by filing a written notice of appeal with the clerk of the Court of Civil Appeals within 14 days after the receipt of the final written decision of the circuit judge.”
Curry perfected an appeal to this court in accordance with §§ 16-24B-3(g) and 16-24B-5(a). Section 16-24B-5(b), Ala. Code 1975, provides that “[t]he decision of the circuit judge [regarding whether a contract principal has proved by a preponderance of the.evidence that the nonrenewal of his or her contract was based upon an impermissible personal or political reason] *714 ... shall be affirmed on appeal unless the Court of Civil Appeals finds the decision to be against the great weight of the evidence.”
Curry first argues that the trial court committed reversible error by refusing to admit testimony regarding whether Curry’s evaluations had been performed in the manner prescribed by the State Board of Education. During the expedited eviden-tiary hearing, the following colloquy occurred:
“[The board’s counsel]: Your Honor, I would object to this line of questioning regarding evaluations. That is not an issue in this case. The issue, the sole issue under the statute is whether or not his recommendation was based on personal or political reasons.
“[Curry’s counsel]: Judge, the statute — I would agree with her that the [first] issue today is 'personal or political reasons. But the statute also says that if the evaluation is not done properly, then the principal’s contract is automatically extended for a year. Now, I suppose we could come back, in a different theory and hear that matter, but, I mean, the rule said, I think, that everything could be considered here today.
“[The board’s counsel]: And I would object to that. There’s no provision in this expedited hearing procedure for the consideration of whether or not an evaluation was done or whether or not an evaluation was done properly.
“[Curry’s counsel]: Judge, Section—
“[The board’s counsel]: And that’s in Section (e), excuse me, 16-24B-3(e)(2)a. is the governing procedure that we’re under today.
“[Curry’s counsel]: And in the same section of law, 16-24B-8(m) states that if the contract principal is not evaluated as required by this section, his or her contract shall be extended for one additional contract year for each contract year not evaluated up to three years.
“[The board’s counsel]: That’s not under (e), which (e) is the subsection that deals with expedited hearings. You’re quoting (m), which is a separate paragraph dealing with the issue of evaluations.
“[Curry’s counsel]: It’s under the Teacher Accountability Act. I would agree that personal and political is part of it, but this is under the very same law.
“[The board’s counsel]: The statute under (e)(1), excuse me, (e)(2)a. does not provide for the hearing on the issue of evaluations. It states that the sole issue at the hearing will be whether or not there were personal or political reasons. That’s the sole issue. It does not state that it includes any evaluations.
“THE COURT: I’m going to sustain the objection at this point.”
(Emphasis added.)
Section 16-24B-3(i)(l), Ala.Code 1975, provides that “[t]he chief executive officer, or his or her designee, shall at least annually evaluate the performance of each contract principal” and that “[t]he evaluation shall be performed in a manner prescribed by the State Board of Education.” Section 16-24B-3(m), Ala.Code 1975, provides that “[i]f a contract principal is not evaluated as required by this section, his or her contract shall be extended one additional contract year for each contract year not evaluated up to three years.” However, § 16-24B-8(e)(2)a. clearly and unambiguously provides that, when there is a nonrenewal of a contract principal’s contract pursuant to § 16-24B-3(c) and he or she requests a hearing in the appropriate circuit court pursuant to § 16-24B-3(e)(2)a., the only issues before the circuit court in that hearing are wheth *715 er “the chief executive officer’s or supervisor’s recommendation to nonrenew the contract was impermissibly based upon a personal or political reason, or the recommendation was approved based upon personal or political reasons of the chief executive officer, supervisor, or the employing board.” Curry did not argue to the trial court that the evidence she sought to introduce regarding the manner in which her evaluations were performed was admissible because it would tend to prove that the nonrenewal of her contract was based upon an impermissible personal or political reason. Rather, she argued to the trial court that that evidence was admissible because it would tend to prove her independent claim that, regardless of whether the nonrenewal of her contract was based upon an impermissible personal or political reason, she was entitled to an automatic extension of her contract pursuant to § 16-24B-3(m) based upon the superintendent’s alleged failure to perform her evaluations in the manner prescribed by the State Board of Education. Therefore, because we can consider only arguments that were presented to the trial court, see Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (holding that an appellate court cannot consider arguments raised for the first time on appeal and that an appellate court’s review is restricted to the evidence and arguments considered by the trial court), in this appeal we cannot consider an argument that evidence regarding the manner in which Curry’s evaluations were performed was admissible on the ground that it would tend to prove that the nonrenewal of her contract was based upon an impermissible personal or political reason. Rather, we can consider only the argument that such evidence was admissible even though it was offered for the sole purpose of proving Curry’s independent claim that, regardless of whether the non-renewal of her contract was based upon an impermissible personal or political reason, she was entitled to an automatic extension of her contract pursuant to § 16-24B-3(m) based upon the superintendent’s alleged failure to perform her evaluations in the manner prescribed by the State Board of Education.
“Tn interpreting the provisions of an Act ..., a court is required to ascertain the intent of the legislature as expressed and to effectuate that intent. Lewis v. Hitt, 370 So.2d 1369 (Ala.1979). The legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage. Ex parte Holladay, 466 So.2d 956 (Ala.1985). Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. Coastal States Gas Transmission Co. v. Alabama Public Service Commission, 524 So.2d 357 (Ala.1988); Alabama Farm Bureau Mutual Casualty Insurance Co. v. City of Hartselle, 460 So.2d 1219 (Ala.1984). If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Dumas Brothers Manufacturing Co. v. Southern Guaranty Insurance Co., 431 So.2d 534 (Ala.1983); Town of Loxley v. Rosinton Water, Sewer, & Fire Protection Authority, Inc., 376 So.2d 705 (Ala.1979).’
“Tuscaloosa Cnty. Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa Cnty., 589 So.2d 687, 689 (Ala.1991). ‘[A] court may explain the language [in a statute], but it may not detract from or add to the statute.’ Water Works & Sewer Bd. *716 of Selma v. Randolph, 833 So.2d 604, 607 (Ala.2002). ‘Furthermore, [the appellate courts are] not at liberty to rewrite statutes....’ Ex parte Carlton, 867 So.2d 332, 338 (Ala.2003).”
Walker v. Montgomery Cnty. Bd. of Educ., 85 So.3d 1008, 1011-12 (Ala.Civ.App.2011).
As noted above, § 16-24B-3(e)(2)a. clearly and unambiguously provides that the only issues before the trial court in a hearing requested pursuant to that Code section are whether “the chief executive officer’s or supervisor’s recommendation to nonrenew the contract was impermissibly based upon a personal or political reason, or the recommendation was approved based upon personal or political reasons of the chief executive officer, supervisor, or the employing board.” Therefore, we conclude that the trial court did not err in refusing to admit evidence regarding the manner in which Curry’s evaluations were performed because it was offered for the sole purpose of proving a claim that was not before the trial court. See § 16-24B-3(e)(2)a.
Curry next argues that the trial court’s judgment is against the great weight of the evidence.
“ ‘Because the trial court heard ore tenus evidence during the [hearing], the ore tenus standard of review applies. Our ore tenus standard of review is well settled. “ ‘When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.’ ” Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).
“ ‘ “ ‘The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.’ Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to ‘disputed issues of fact,’ whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘ “ ‘[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.’ ”
“ ‘Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, “that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.” Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).’
“Kennedy v. Boles Invs., Inc., 53 So.3d 60, 67-68 (Ala.2010).”
Fort Morgan Civic Ass’n v. City of Gulf Shores, 100 So.3d 1042, 1045-46 (Ala.2012) (emphasis added). Moreover, when a trial court receives conflicting evidence in an ore tenus hearing, “we must view ““the evidence in a light most favorable to the prevailing parties].’ ” ’ ” McClellan v. McClellan, 959 So.2d 658, 661 (Ala.Civ.App.2006) (quoting Diggs v. Diggs, 910 So.2d 1274, 1275 (Ala.Civ.App.2005), quot *717 ing in turn Architectura, Inc. v. Miller, 769 So.2d 330, 332 (Ala.Civ.App.2000), quoting in turn Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App.1993)).
In stating that, under the ore tenus standard of review, an appellate court will not disturb a trial court’s determination regarding an issue of fact, “ ‘ “ ‘unless it is clearly erroneous and against the great weight of the evidence, but will affirm if, under any reasonable aspect, it is supported by credible evidence,’ ” ’ ” Fort Morgan Civic Ass’n, 100 So.3d at 1045 (quoting Kennedy v. Boles Invs., Inc., 53 So.3d 60, 68 (Ala.2010), quoting in turn Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000), quoting in turn Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)), the supreme court has indicated that a trial court’s determination regarding a disputed issue of fact is not against the great weight of the evidence “ ‘ “ ‘if, under any reasonable aspect, it is supported by credible evidence.’ ” ’ ” Id. Accordingly, if credible evidence supports the factual determinations upon which the trial court based its judgment, we cannot hold that the judgment of the trial court is against the great weight of the evidence. Id.
 Curry, who is African-American, argues that the judgment of the trial court is against the great weight of the evidence because, she says, the great weight of the evidence indicated that the nonrenewal of her contract was based upon the impermissible personal reason of racism. However, the trial court had before it conflicting testimony regarding whether the nonre-newal of her contract was based upon racism.
“ ‘ “ ‘Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court....’” Ex parte Roberts, 796 So.2d 349, 351 (Ala.2001) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)). “When the evidence in a ease is in conflict, the trier of fact has to resolve the conflicts in the testimony, and it is not within the province of the appellate court to reweigh the testimony and substitute its own judgment for that of the trier of fact.” Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913 (Ala.Civ.App.1985). “[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.” Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (citations omitted).’ ”
Friedman v. Friedman, 971 So.2d 23, 28 (Ala.2007) (quoting Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004)).
The superintendent, who is Caucasian, testified that he was the person who had recommended the nonrenewal of Curry’s contract, that he had thought about the decision for several months before he decided to recommend the nonrenewal of her contract, and that lack of leadership and declining test scores were his reasons for recommending the nonrenewal of her contract. He further testified that the fact that Curry is African-American played no part in his decision to recommend the nonrenewal of Curry’s contract. The superintendent testified that, in evaluating Curry’s leadership as a principal, he considered her failure to make herself readily available to communicate with the parents of students, her lack of problem solving, her failure to analyze test scores in order to determine the areas in which instruction was needed, and her failure to make use of technology that was available to enhance the learning experience of the students at her school. The superintendent also testified that, although Curry’s school had never failed to meet the test-score standards for the “Adequate Yearly *718 Progress” mandated by the No Child Left Behind Act of 2001, 20 U.S.C. § 6301 et seq., a longitudinal study of those scores had shown a decline in the scores every school year since the 2007-2008 school year.
The board’s curriculum-instruction director, who is the Caucasian wife of one of the board members who voted in favor of the nonrenewal of Curry’s contract, testified that she had collected some of the data the superintendent had used in performing his final evaluation of Curry, an evaluation that had assigned Curry a numerical score that fell within the “unsatisfactory” range. The curriculum-instruction director further testified that she is not a racist, that the fact that Curry is African-American had not affected her collection of the data used by the superintendent, and that she and her husband had not discussed the data she had collected for the final evaluation of Curry performed by the superintendent or the superintendent’s recommendation that Curry’s contract not be renewed.
The four board members who voted in favor of the nonrenewal of Curry’s contract, all of whom are Caucasian, testified that the fact that Curry is African-American played no part in their decision to vote in favor of the nonrenewal of her contract. All of them testified that they had based their decision to vote in favor of the nonre-newal of her contract on the superintendent’s recommendation. In addition, the board member who is married to the curriculum-instruction director testified that he and his wife had not discussed the data his wife had collected for the superintendent’s final evaluation of Curry or the superintendent’s recommendation that Curry’s contract not be renewed.
Curry introduced testimony tending to prove that the nonrenewal of her contract was based upon the fact that she is African-American. However, in its judgment, the trial court stated, in pertinent part:
“Upon consideration of the sworn testimony and exhibits entered into evidence, the Court makes the following finding: Plaintiff, Bonnie Curry, was hired as a contract principal with the Russell County Board of Education. Prior to the expiration of her employment with the Russell County School Board, Mike Green, Chief Executive Officer of the Russell County School System recommended to the Russell County School Board that Bonnie Curry’s employment contract with the Russell County School Board not be renewed. Two reasons were cited for the non-renewal: declining test scores and lack of leadership skills. The Russell County School Board voted at a regularly scheduled board meeting to accept Mr. Green’s recommendation, and not renew Bonnie Curry’s employment contract. The vote was four board members voting not to renew and three board members voting to reject the recommendation of the chief executive office. The four Board members voting to accept the recommendation are Caucasian. The three Board members voting to reject the recommendation are [A]fro-[A]merican. The complainant, Bonnie Curry is [A]fro-[A]merican.
“Complainant, Bonnie Curry, testified that she believed that the decision to terminate her employment was based on racial reasons, two of the School Board Members who voted against the termination of Bonnie Curry’s employment contract stated in their opinions that the decision to terminate her employment was based on racial reasons. All four Russell County School Board Members who voted to accept the recommendation not to renew Bonnie Curry’s Employment Contract testified that their deci *719 sion was based solely upon the Chief Executive’s recommendation1 which cited declining test scores and lack of leadership skills.
“The Court finds that the Plaintiff, Bonnie Curry has failed to prove by a preponderance of the evidence that the denial of the extension of her employment contract was based upon personal or political reason.”
The trial court implicitly found that the evidence tending to prove that the nonre-newal of Curry’s contract was not based upon racism was credible, and we cannot substitute our judgment for that of the trial court regarding such a credibility determination. See Friedman, supra. Accordingly, because there was credible evidence supporting the trial court’s determination that the nonrenewal of Curry’s contract was not based upon racism, we cannot hold that that determination regarding a disputed issue of fact is against the great weight of the evidence. See Fort Morgan Civic Ass’n, supra.
Curry also argues that the judgment of the trial court was against the great weight of the evidence because, she says, the evidence indicated that the reasons cited by the superintendent for his recommending the nonrenewal of Curry’s contract were not valid. However, the evidence regarding whether those reasons were valid was in conflict, and the trial court implicitly found that the evidence indicating that those reasons were valid was credible. We cannot substitute our judgment for that of the trial court regarding such a credibility determination. See Friedman, supra. Therefore, because there was credible evidence supporting the trial court’s implicit determination that the reasons cited by the superintendent for recommending nonrenewal of Curry’s contract were valid, we cannot hold that that implicit determination regarding an issue of fact is against the great weight of the evidence. See Fort Morgan Civic Ass’n, supra.
Finally, Curry argues that we should reverse the judgment of the trial court because, she says, the evidence established that the board member who is married to the curriculum-instruction director was not impartial and fair-minded regarding the nonrenewal of Curry’s contract because of his marital relationship with the curriculum-instruction director and, therefore, that board member should have recused himself from voting regarding the nonrenewal of Curry’s contract. However, Curry has not cited any legal authority supporting the proposition that the marital relationship of that board member and the curriculum-instruction director ipso facto disqualified that board member from voting regarding the nonre-newal of Curry’s contract, and “[w]e have unequivocally stated that it is not the function of [an appellate court] to do a party’s legal research....” Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994). Moreover, that board member and his wife both testified that they had not discussed either the data collected by the wife for the superintendent’s final evaluation of Curry or the superintendent’s recommendation that Curry’s contract not be renewed. The trial court implicitly found that that testimony was credible, and we cannot substitute our judgment for that of the trial court regarding such a credibility determination. See Friedman, supra. Moreover, the trial court implicitly found that that board member was fair-minded and impartial regarding the nonrenewal of Curry’s contract, and because that implicit determination regarding an issue of fact is supported by credible evidence, we cannot hold it was against the great weight of the evidence. See Fort Morgan Civic Ass’n, *720 supra. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and THOMAS and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

.Section 16-24B-2(2), Ala.Code 1975, provides that a contract principal "[¡Includes only those persons hired on or after July 1, 2000, and certified for the position of principal as prescribed by the State Board of Education and who are employed by an employing board as the chief administrator of a school....”

. Section 16-24B-2(1), Ala.Code 1975, defines a chief executive officer as "[t]he chief administrative officer of the employing board, including the superintendent of any public county or city school system....”

. Section 16-24B-2(5), Ala.Code 1975, provides that an employing board "[i]ncludes all local boards of education....”